JAMES KETCHINGMAN, Plaintiff in Error,

*vs.*

THE STATE OF WISCONSIN, Defendant in Error.

ERROR TO THE RACINE CIRCUIT COURT.

An indictment, charging the defendant with distinct felonies of the same kind in different counts, is good *after verdict*, and will sustain the conviction.

Evidence of distinct felonies of the same kind may be given under an indictment containing several and distinct counts.

Where testimony, otherwise inadmissible for irrelevancy, is called out by one party, it is competent for the other party to re-examine the witness fully as to the matter thus disclosed.

Evidence to impeach a witness, is generally confined to the general character of the witness for truth and veracity.

Rule of examination with a view to impeaching a witness by proving different statements made out of court, indicated.

On the trial of an indictment for adultery, the female accomplice of the defendant called by the prosecution, cannot be required to answer on cross examination the question, whether the defendant or any other person had ever produced an abortion on her.

The defendant was convicted upon an indictment for adultery. The indictment contained two counts; the first charged that "on the first day of August, in the year of our Lord one thousand eight hundred and fifty-three, at the city of Racine, aforesaid," the defendant "did commit the crime of adultery with one Caroline White, the wife of one Orrin White, by then and there having carnal knowledge of the body of her, the said Caroline White, he, the said James Ketchingman, then and there being a married man, and having a lawful wife then alive, and she, the said Caroline White, then and there being a married woman, and the lawful wife of the said Orrin White, contrary to the form of the statute," &c.

The second count differs from the first only in alleging the

said Caroline White to be a married person, and "she, the said Caroline White, not then and there being the wife of the said James Ketchingman."

The points arising upon this indictment and the evidence under it are sufficiently indicated in the opinion.

*H. T. Sanders*, for the plaintiff in error.

*Wm. P. Lyon*, Dist. Atty. for the state.

*By the Court*, COLE, J.  A majority of the court are of the opinion that the judgment of the circuit court in this case must be affirmed.  The several objections taken to the ruling of the circuit court as to the admission or rejection of certain testimony offered upon the trial, can be conveniently considered in the order in which they are presented to us on the brief of the counsel for the plaintiff in error.

The plaintiff in error was indicted at the April term of the circuit court for Racine county, 1855, for committing the crime of adultery with one Caroline White.  The indictment contains two counts, each charging the offense to have been committed at the city of Racine, on the first day of Aug., 1852. Upon the trial, Caroline White was introduced as a witness; who testified to the plaintiff in error having sexual intercourse with her at the house of Thomas Fuller.  The district attorney offered to prove by her another distinct act of adultery, at a time and place different from the first sworn to. This testimony was objected to, but the objection was overruled, and the evidence admitted.  It is now contended that the court erred in permitting the counsel for the prosecution to give evidence of two distinct acts of adultery under this indictment.

Archbald, in his work upon criminal pleading, in speaking of the joinder of several offenses in different counts in one indictment, page 59, says: "A defendant ought not to be

"charged with different felonies in different counts of an "indictment; as, for instance, a murder in one count, and a "burglary in another; or a burglary in the house of B., in one "count, and a distinct burglary in the house of A. in another; "or a larceny of the goods of A. in one count, and a distinct "larceny of the goods of B. at a different time in another. If "the objection in such a case be made before the defendant "has pleaded, or the jury are charged, the judge in his dis- "cretion may quash the indictment; or if it be not discovered "until after the jury are charged the judge may put the pros- "ecutor to his election on which charge he will proceed; but "it is no objection in arrest of judgment." In the case of *R.* vs. *Young et al.*, 3 T. R. 106, cited by him, four defendants were charged jointly in four several counts in the indictment, of obtaining money under false pretences, with intent to defraud. And although that defense was a misdemeanor under the statute of 30 Geo. 3 Chap. 24, an objection was taken to the indictment, that it contained separate offenses in different counts.

Justice Buller, in considering the objection, made the follow- ing observations: "In misdemeanors, the case in Burrow shows that it is no objection to an indictment that it contains sev- eral charges. The case of felonies admits of a different con- sideration; but even in such cases it is no objection in this stage of the prosecution. On the face of an indictment, every count imports to be for a different offense, and is charged at different times. And it does not appear on the record whether the offenses are, or are not, distinct. But if it appear before the defendant has pleaded, or the jury are charged, that he is to be tried for separate offenses, it has been the practice of the judges to quash the indictment, lest it should confound the pris- oner in his defense, or prejudice him in his challenge of the jury; for he might object to a juryman's trying one of the offenses, though he might have no reason to do so in the other. But these are only matters of prudence and discretion. If the judge who tries the prisoner does not discover it in time, I think he may put the prosecutor to make his election on which

charge he will proceed. I did it at the last sessions at the Old Bailey, and I hope that in exercising that discretion, I did not infringe on any rule of law or justice. But if the case has gone to the length of a verdict, it is no objection in arrest of judgment. If it were, it would overturn every indictment which contains several counts." See *The People vs. Austin*, 1 Parker, C. R., 154. *Rex vs. Dunn*, 1 Mood., C. C, 146. *Reg. vs. Hinley*, 2 M. & Rob., 524. The above authorities show that an indictment which charges a defendant with distinct felonies in different counts, is not subject to objection upon that ground, after verdict, but will sustain a conviction. This being the case, it would seem to follow necessarily, that evidence of distinct acts of adultery might be given under the different counts of this indictment. The court in this case did not deem it advisable, or was not asked by the defendant, to put the district attorney upon an election on which charge he would proceed. The case of the *State vs. Bates*, 10 Conn. R., 372, to which we were referred by the counsel for the plaintiff in error, is obviously distinguishable from the one now under review. In that case the information charged but one offense, and that in a single count ; while evidence of a different act of adultery at different times and places was admitted under objection. The court held that the testimony was improperly admitted, and granted a new trial. But in this case at bar the prosecution did not attempt to prove more than they had charged in the indictment. Thomas Fuller, who testified on his examination in chief to seeing the defendant and Mrs. White together, that he found them alone once at his house ; on his cross-examination, stated that they had not been there over two minutes when he came in ; that the defendant was writing and Mrs. White stood against the door, twenty feet apart, and defendant said he was writing a prescription for Mrs. White's child. Upon the examination in chief being resumed he was asked whether he made any remark that called out the statement from the defendant as to what he was writing? This question was objected to, and we think was properly overruled. We do not see that this conversation could be very material,

but since a part of it had been called out by the defendant, it was competent to reexamine the witness as to all the conversation connected with the remark. 1 Greenl. Ev., § 467.

The witness, Caroline White, was asked by the counsel for the defendant, if she had ever had intercourse with any other person except her husband and defendant. This question was objected to, and the objection sustained. It appears however that the witness, of her own accord, answered the question in the negative; when the district attorney withdrew his objection. We did not understand the counsel for the plaintiff in error as seriously contending that his client could have possibly been prejudiced by the ruling, of the court in sustaining an objection which was subsequently withdrawn. The witness was again asked if she had ever had connection with the defendant at any other place than at her house, and at Mr. Fuller's house. This question was likewise objected to, and the objection sustained by the court. But still it appears from the bill of exceptions that the witness testified that she did not know how many times she had intercourse with the defendant, did not remember how many times she had done so at Fuller's, or how many times before the time stated when Fuller came in; that she had but once before the time stated at her house; could not say how many times after at her house before the return of her husband; or how many times after the return of her husband. It is very evident that very great latitude was given the defendant to examine the witness as to acts of adultery between himself and her, and it is most disgustingly manifest that she was accustomed frequently to offer her person to the lewd embraces of the defendant. What object there could have been in showing that these scenes of pollution were enacted elsewhere than at the house of Fuller, or that of the witness, we do not perceive, but certainly the fact was established beyond all doubt or controversy, that the witness was the concubine of the defendant, and that there was more than one instance of criminal connection between them. She was also asked whether the defendant or any other person had ever produced an abortion upon her. This question was irrelevant,

and was therefore properly overruled. It had no reference to the fact of adultery, which was the matter in issue. Evidence to impeach the character of a witness is commonly confined to his general character for veracity. *Commonwealth* vs *Moore*, 3 Pick., 194. *Jackson* vs. *Lewis*, 13 J. R., 503. *Bakman* vs. *Rose*, 14 Wend., 105 ; S. C. in 18 Wend., 146 ; *Rex* vs. *Hodgson*, Russ. & Ry. Cr. Cas., 211 ; *Rex* vs. *Stark*, R., 241, 1 Green. Ev. § 458 ; 2 Id. § 577 ; 3 Id. § 213, 214 ; *Rex* vs. *Bispham*, 4 Car. & Payne, 392. In some cases the inquiry has been further extended. *Commonwealth* vs. *Murphy*, 14 Mass., 387. *The People* vs. *Abbot*, 19 Wend., 193. *The State* vs. *Jefferson*, 6 Ir., C. L. R., 305. *Rex* vs. *Barker*, 3 Car., & P. 589 *Rex* vs. *Martin et al.*, 6 Id. 562. But we do not think public justice requires so great relaxation of the rule as to permit such a question as was put to the witness in reference to an abortion having been produced upon her to be answered. As already remarked, her character for chastity was sufficiently impeached by her own confession.

There is but one other point upon which we deem it necessary to make any observations. For the purpose of impeaching the testimony of Caroline White, the witness, Fuller, was asked if she did not tell him before the arrest, that the defendant never had connection with her. Before this testimony could be admitted it was necessary to lay a foundation for it, by asking Mrs. White specifically the same question. Mrs. White was asked with great particularity whether she did not tell Fuller at the foot of the hill near Underhills that the defendant never had anything to do with her. The rule upon this point is clearly stated in 1 Greenl. Ev., § 462. For the same reason the question put to Fuller as to whether Mrs. White, after the arrest, had not told him that she was compelled by her husband to make the complaint against the defendant, and that her husband wanted her to enter a complaint against Fuller, the witness, and that defendant had nothing to do with her, was improper. Mrs. White was asked whether she had not told Fuller all this at a particular time and place. If it was proposed to contradict her by the wit-

ness, Fuller, he should have been asked whether she had not told him so and so, at the same time and place he might have answered this general question in the affirmative, and it would not in any manner have implicated or contradicted the evidence of Mrs. White. These observations we believe dispose of all the questions necessary to be noticed.

Judgment of the circuit court affirmed.

SMITH, J., Dissenting. I cannot concur with my brethren in the conclusions of law to which they have arrived in this case. It seems to me that the rule laid down in relation to the impeachment of a witness by proof of different statements made out of court from those made upon the stand, is too limited, and if rigidly applied in all cases would seriously impair, if it would not destroy, the utility of that mode of impeachment. It seems to me, (although the bill of exceptions is exceedingly awkward and confused) that the subject matter, time and place of the inquiry put to the witness was sufficiently specific to command the attention of the witness, and sufficiently suggestive of detail to preclude mistake or forgetfulness, and ought to have been answered.

Besides, it should be borne in mind that the witness stood in the place of an accomplice, and hence great latitude should have been given on cross examination. Here was presented the disgusting spectacle of the husband becoming the prosecutor of the defendant for adultery with his wife, and calling upon the wife, the sole witness to the *corpus delicti*, to sustain the prosecution. Under such circumstances it is submitted that the sphere of cross-examination should not have been too critically circumscribed, but that all the tests of truthfulness which the law has provided should have full scope. Although the jury had the right to convict, and in this instance did convict under proper instructions, yet under such circumstances the most searching cross-examination might sometimes fail to protect the innocent against a thorougly planned conspiracy.